**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HUGO CESAR GERVACIO, | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 23 CV 231** |
| | ) | |
| v. | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| LVNV FUNDING LLC, | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Hugo Cesar Gervacio ("Gervacio") brings this case against LVNV Funding LLC

("LVNV") alleging that it violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681s-

2(b)(1)(A), by failing to conduct a reasonable investigation after he disputed the accuracy of

certain information listed in his credit card account after LVNV reported the account to the three

major credit reporting agencies (Experian, Equifax, and TransUnion).  LVNV seeks summary

judgment on the grounds that: (1) it did not report any information that was inaccurate or

incomplete; (2) it reasonably investigated the disputes raised by Gervacio; and (3) Gervacio has

failed to show proof of any damages.  (Dckt. #57).  For the below reasons, LVNV's motion for

summary judgment is granted because no reasonable jury could find that the information that

Gervacio challenged was inaccurate or incomplete within the meaning of the FCRA.

**I.      LEGAL STANDARD**

**A.      Standard for Summary Judgment**

Summary judgment is appropriate when the moving party shows "that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of

law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  "A genuine dispute is present

1

if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248. Of course, "[i]t is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008).

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party. *King v. Hendricks Cnty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). Ultimately, summary judgment is granted only if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (cleaned up).

## II.    FACTUAL RECORD

The following facts are undisputed unless otherwise noted:

2

Gervacio opened a Credit One Bank, N.A. ("Credit One") credit card in February 2019 ending in 6172 (the "Account,") and owes $824.73 on the Account. (Dckt. #63 ¶¶2–3, Gervacio's response to LVNV's statement of material facts ("DSOF Resp.")). In September 2019, Credit One sent Gervacio a billing statement with a payment due date of September 28, 2020. (Dckt. #64 ¶3, LVNV's response to Gervacio's statement of material facts ("PSOF Resp.")). Gervacio did not make a payment by September 28, 2020, and did not make a payment until December 14, 2020. (PSOF ¶4; Dckt. #59-2 at 63).

On July 16, 2021, LVNV was assigned Gervacio's Account after a series of transfers. (DSOF ¶5). In October 2021, LVNV reported Gervacio's Account for collection to Experian, Equifax, and TransUnion, the three major credit reporting agencies ("CRAs"). (*Id.* ¶7).

LVNV outsources its master servicing to Resurgent Capital Services, L.P., who acts on behalf of LVNV, and receives disputes from CRAs via Automated Consumer Dispute Verification ("ACDV") forms and dispute letters.[1] (*Id.* ¶¶6, 10). Once LVNV receives a general dispute, it "will compare its internal data with the data currently being reported by the CRA, confirm the data as accurate, revise any inaccuracies, and report its results back to the CRA." (*Id.* ¶12). In the event LVNV receives a specific dispute, it will "look what is being specifically disputed, will compare the internal data with the data currently being reported by the CRA as to the specific dispute, confirm the data as accurate, revise any inaccuracies, and report its results back to the CRA."[2] (*Id.* ¶13).

---

[1] Hereafter, to avoid confusion, the Court solely uses "LVNV" to refer to both the actions of LVNV, and the actions of Resurgent Capital Services, L.P., when acting on behalf of LVNV.

[2] Gervacio disputes LVNV's statements of fact concerning LVNV's response to general and specific disputes because LVNV's Rule 30(b)(6) witness was not the person who handled Gervacio's dispute and therefore lacked personal knowledge of whether Gervacio's billing statements were reviewed during the course of LVNV's investigation into the Account. (DSOF Resp. ¶¶12–13). Gervacio's dispute is nonresponsive to LVNV's statement of fact, which describes LVNV's typical business practice and says nothing about Gervacio's billing statements. Furthermore, "a Rule 30(b)(6) witness testifies not on the

On or about September 23, 2022, Gervacio disputed the Account with Experian, (*id.* ¶8), and LVNV received an ACDV report from Experian on or about the same date, (*id.* ¶14). The September 23, 2022 ACDV was coded "112," which means that the "[c]onsumer states inaccurate information. Provide or confirm complete ID and verify all account info." (*Id.* ¶15). On or about October 26, 2022, LVNV received another ACDV from Experian for the Account which was coded that the consumer "[d]ispute[s] present/previous Account status/payment history profile/payment rating. Verify Payment History Profile, Account Status, and Payment Rating." (*Id.* ¶¶18–19). On or about October 27, 2022, LVNV received an ACDV from Equifax about the Account that was coded that the consumer "Disputes Date of First Delinquency. Verify Date of First Delinquency." (*Id.* ¶¶22–23). On or about October 29, 2022, LVNV received an ACDV from TransUnion related to the Account which once more was coded "112," which means that the "[c]onsumer states inaccurate information. Provide or confirm complete ID and verify all account info." (*Id.* ¶¶27–28).

LVNV followed its standard procedures in responding to the CRAs in relation to the ACDV reports.[3] (*Id.* ¶¶16, 20, 24, 29, 32). The procedures included reviewing billing statements to confirm the date of first delinquency. (*Id.* ¶31). In responding to the CRAs, LVNV reported that Gervacio's Account opening date was in July 2021. (PSOF Resp. ¶5). In addition, in responding to the ACDV report received from Equifax, LVNV updated the

---

basis of personal knowledge about a particular event but rather testifies as to a corporation's general polices, practices, and procedures." *Abu-Eid v. Discover Prods., Inc.*, 589 F.Supp.3d 555, 560 (E.D.Va. 2022); *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D.Ill. 2011).

[3] Gervacio again disputes whether LVNV followed standard procedures based on LVNV's Rule 30(b)(6) witness's failure to personally review Gervacio's billing statements. (DSOF Resp. ¶16). Because a Rule 30(b)(6) witness may testify about standard procedures, and because Gervacio provides no support for disputing that the ACDVs were reviewed according to the standard procedures, this fact is deemed admitted. *See supra* note 2.

Account's date of first delinquency from October 1, 2020 to October 4, 2020. (DSOF Resp. ¶26).

According to LVNV, the date of first delinquency is determined by the terms and conditions of the Account's credit card agreement. (*Id.* ¶36). Gervacio made a payment on his Account during his billing cycle from August 5, 2020 to September 4, 2020, but did not make a payment during the billing cycle from September 5, 2020 to October 4, 2020. (*Id.* ¶¶37–38). LVNV states that Gervacio's account first became delinquent on the statement closing date of October 4, 2020. (*Id.* ¶39). Gervacio disagrees and asserts that his date of first delinquency is the date after he missed the September 28, 2020 "Payment Due Date" contained in his billing statement from Credit One. (PSOF Resp. ¶3).

Gervacio states that he experienced stress from having inaccurate information on his credit report and that, as a result, he lost sleep. (*Id.* ¶18). Gervacio specifically remembers one night in January 2023 where he did not sleep at all because of "Defendant's failure to conduct a reasonable investigation and the Defendant's reporting of inaccurate information." (*Id.* ¶20).

## III.    ANALYSIS

"Congress enacted the FCRA 'to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Frazier v. Equifax Info. Servs., LLC*, 112 F.4th 451, 455 (7th Cir. 2024), *quoting Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). "To safeguard these interests, the FCRA provides a private right of action for injured consumers." *Persinger v. Sw. Credit Sys., L.P.*, 20 F.4th 1184, 1194 (7th Cir. 2021).

The federal circuit courts that have interpreted §1681s-2(b) agree that a "plaintiff must make a prima facie showing that the data furnisher provided incomplete or inaccurate information" to succeed on a claim under this provision of the FCRA. *See, e.g., Frazier v.*

*Dovenmuehle Mortg., Inc.*, 72 F.4th 769, 775 (7th Cir. 2023) (citing cases); *Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1313 (11th Cir. 2018) ("Felts cannot prevail on her claim against Wells Fargo pursuant to §1681s-2(b) . . . without identifying some fact in the record establishing that the information Wells Fargo reported regarding her account was inaccurate or incomplete."); *Krausz v. Equifax Info. Servs., LLC.*, No. 21-CV-7427(KMK), 2023 WL 1993886, at *11 (S.D.N.Y. Feb. 14, 2023) ("[A] threshold showing of inaccuracy or incompleteness is necessary to succeed on a claim under §1681s-2(b).") (cleaned up). If a plaintiff is unable to show that the disputed credit information is either inaccurate or incomplete, "no further inquiry into the reasonableness of the consumer reporting agency's procedure is necessary." *Goldenberg v. TransUnion, LLC*, No. 23-CV-9514 (NGG) (LKE), 2025 WL 2200486, at *3 (E.D.N.Y. Aug. 1, 2025) (cleaned up).

The Seventh Circuit interprets "incomplete" or "inaccurate" to mean that the data furnisher provided information that was "patently incorrect" or "materially misleading," such that "it can be expected to adversely affect credit decisions." *Frazier*, 72 F.4th at 775, *quoting Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009); *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 813 (7th Cir. 2023). Information must be materially misleading, and not just misleading, to be actionable. *See Samoura v. Trans Union LLC*, No. CIV-20-5178, 2021 WL 915723, at *8 (E.D.Pa. Mar. 10, 2021), *aff'd sub nom. Bibbs v. Trans Union LLC*, 43 F.4th 331 (3d Cir. 2022). "Mere imprecision is not enough. Rather, a plaintiff must establish that the information provided by [the furnisher] is open to an interpretation that is directly contradictory to the true information." *Boyer v. TransUnion, LLC*, No. 3:21-CV-00918 (KAD), 2023 WL 1434005, at *3 (D.Conn. Feb. 1, 2023) (cleaned up); *Complot v. US Bank NA*, No. CV-25-00255-PHX-SMB, 2025 WL 2770857, at *5 (D.Ariz. Sept. 26, 2025) (same). The

6

completeness or accuracy of the disputed information under §1681s-2(b) "is evaluated objectively based on the content of the furnisher's ACDV response." *Frazier*, 72 F.4th at 777; *Olivas v. Golder I Cu*, No. 2:22-CV-01243-DJC-CKD, 2024 WL 4545892, at *2 (E.D.Cal. Oct. 22, 2024) ("To evaluate whether information in a report is patently incorrect or materially misleading, courts consider the report in its entirety.").

Once LVNV received Gervacio's ACDVs from the CRAs, its duty to investigate was triggered. When a consumer reporting agency notifies a furnisher of an account dispute, the furnisher must: "(1) conduct an investigation with respect to the disputed information; (2) review all relevant information provided to it by the consumer reporting agency; (3) report the results of the investigation to the agency; and (4) if the information is found to be inaccurate or incomplete, report the results to all consumer reporting agencies to which it originally provided the erroneous information." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (citing 15 U.S.C. §1681s-2(b)). Should a person negligently violate the FCRA, Section 1681o allows for actual damages after the plaintiff shows "a causal relation between the violation of the statute and the loss of credit, or some other harm." *Crabill v. Trans Union, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). In the case of willful violation, Section 1681n allows for statutory and/or punitive damages, and a plaintiff need not show actual damage. *See Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008); *Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp.2d 940, 949 (N.D.Ill. 2006).

### A. Gervacio Has Failed to Meet His Burden of Showing That a Reasonable Jury Could Find that LVNV Reported Inaccurate Information to the CRAs

The burden rests on Gervacio to "identify the specific information" that LVNV reported to the CRAs "that is inaccurate and explain why the identified information is inaccurate." *Phipps v. Experian*, No. 20-CV-3368 (LLS), 2020 WL 3268488, at *3 (S.D.N.Y. June 15, 2020).

7

Gervacio argues that LVNV reported two pieces of inaccurate information, namely: (1) the date of his account opening; and (2) the date of his account delinquency. (Dckt. #62 at 3, 7–9). Gervacio fails, however, to show that a reasonable jury could find that the information in question is inaccurate within the meaning of the FCRA.

**1. Gervacio's credit reports accurately state the date that LVNV opened its account.**

The undisputed facts regarding the account opening date are as follows. Gervacio obtained his Credit One credit card in February 2019. (DSOF Resp. ¶2). Gervacio owes $824.73 on the card, and the debt was assigned to LVNV on July 16, 2021. (*Id.* ¶5). Resurgent, on behalf of LVNV, reported the account to the three major CRAs beginning in October 2021 to attempt to collect on the account. (*Id.* ¶7; Dckt. #3 ¶32). According to Gervacio, LVNV inaccurately reported the account opening date to the CRAs as July 16, 2021—instead of February 2019—thereby representing that he "currently pose[d] a greater risk of default." (Dckt. #3 ¶33).

While it may be true that Credit One opened Gervacio's account in February 2019, when the account opening date is read in the context of the entire credit report, as it must be, *see Frazier*, 72 F.4th at 777; *Olivas*, 2024 WL 4545892, at *2, no reasonable jury could understand the credit report to indicate—as Gervacio implies—that "the debt, though once owned by another, was opened and defaulted on the reported 'Date opened' and not years earlier." (Dckt. #62 at 8). This is so because the credit reports: (1) state the "original creditor name" as "Credit One Bank N.A.;" (2) state that the "date of first delinquency" was in October 2020; (3) state that the "account status" is in "collection"; (4) list the "collection account" as being held by "LVNV Funding LLC;" (5) report an account "date opened" of July 16, 2021; and (6) identify the "loan type" as a "debt_buyers_account." (Dckt. #62 at 30–31, 66). Given this, the July 16, 2021

8

account opening date can only reasonably be understood as referring to the date that the debt buyer (LVNV) opened its account and *not* to the date the original creditor (Credit One) opened the account. *See, e.g.*, *Ayala v. Experian Info. Sols.*, No. 22-CV-4935, 2024 WL 1328827, at *1 (N.D.Ill. Mar. 28, 2024) ("When a debt buyer like Cavalry opens a collection account, it reports the 'open date' of the account as the date it acquired the debt. . . . This date is distinct from the date the original creditor opened the account, and thus does not reflect the age of the [account].").[4] Because Gervacio does not dispute that LVNV acquired his account on July 16, 2021, he effectively concedes the accuracy of the "opening date" contained in his credit reports. (Dckt. #62 at 7). No reasonable jury could find to the contrary.

**2. LVNV accurately reported the date that Gervacio's account became delinquent.**

The undisputed facts regarding the date Gervacio's account became delinquent are as follows. Gervacio made a payment on the account on August 22, 2020, which was during the August 5, 2020 to September 4, 2020 billing cycle. (DSOF Resp. ¶37). In September 2020, Gervacio received a Credit One billing statement warning him that he owed a balance, that the "payment due date" was "09/28/2020," and that, "[i]f [Credit One] did not receive [his] minimum payment by the date listed above, [he] may have to pay a late fee." (PSOF Resp. ¶3). Gervacio failed to make a payment during the September 5, 2020 to October 4, 2020 billing

---

[4] Gervacio's reliance on *Toliver v. Experian Info. Sols., Inc.*, 973 F.Supp.2d 707 (S.D.Tex. 2013), to support his contention that the account opened date would be understood to be the date Credit One opened his account is misplaced. In *Toliver*, the court found plaintiff's credit report could be interpreted to report that plaintiff took out a loan and immediately defaulted without making any payments where the report contained an entry titled "date opened" with the date the reporting creditor obtained the debt (rather than the date the debt actually arose) and indicated that no payment had ever been made. *Id.* at 721. Here, by contrast, Gervacio's credit reports make it clear that his account first became delinquent in October 2020. (Dckt. #62 at 31, 66). Thus, unlike in *Toliver*, no reasonable jury could read Gervacio's credit reports and find that he immediately defaulted on the debt on the date that the account opened because Gervacio became delinquent on the debt eight months *before* the July 16, 2021 account opening date.

cycle.  (DSOF Resp. ¶38).  Equifax had a date of first delinquency reporting date of October 1, 2020 and LVNV updated it to October 4, 2020.  (*Id*. ¶26).

The parties dispute the date that Gervacio's account became delinquent.  Gervacio contends that his account became delinquent on September 29, 2020, the day after he failed to make a payment on the September 28, 2020 date stated on the Credit One billing statement.  LVNV, on the other hand, argues that Gervacio's date of first delinquency is October 4, 2020 because that is the date that Credit One's billing cycle ended.  In other words, it is LVNV's position that Gervacio had until October 4, 2020 to make his payment in order to avoid being delinquent notwithstanding the September 28, 2020 "due date" stated in Credit One's billing statement.

The parties' disagreement about the date when Gervacio's account became delinquent (which boils down to a discrepancy of five days) is the type of immaterial factual dispute that cannot preclude summary judgment in LVNV's favor.  *Anderson*, 477 U.S. at 247–48.  Even if Gervacio became delinquent on September 29, 2020, as he asserts, no reasonable jury could find that LVNV's error in reporting that he became delinquent on October 4, 2020 was "materially misleading" within the meaning of the FCRA.  Indeed, no reasonable jury could find that such an error could "be expected to adversely affect credit decisions."  *Frazier,* 72 F.4th at 776.  At worst, LVNV's error was an imprecision that actually benefited Gervacio by indicating that he became delinquent on his account on a later date than he actually did.  *See, e.g.*, *Complot*, 2025 WL 2770857, at *6 (rejecting plaintiff's claim that defendant bank violated the FCRA when it inaccurately reported his debt as past due in July 2023 when it was actually past due in June 2023 because the "delay in recognizing a delinquency benefits Plaintiff rather than adversely affecting his credit").

In sum: because Gervacio has failed to meet his threshold burden of offering sufficient evidence to show that a reasonable jury could find that his credit reports contained inaccurate information within the meaning of the FCRA, LVNV is entitled to summary judgment. *Frazier*, 72 F.4th at 775 (citing cases); *Felts*, 893 F.3d at 1313. Accordingly, the Court need not address whether LVNV had reasonable procedures; whether LVNV conducted a reasonable investigation after Gervacio disputed his credit information; whether LVNV willfully violated the FCRA; or whether Gervacio suffered any damages. *See, e.g.*, *Shaw v. Experian Information Sols., Inc.*, 891 F.3d 749, 759 (9th Cir. 2018); *Goldenberg*, 2025 WL 2200486, at *3.

## CONCLUSION

For the foregoing reasons, defendant LVNV's motion for summary judgment, (Dckt. #57), is granted.

**DATE:** **March 16, 2026**

_____
**Jeffrey I. Cummings**
**United States District Court Judge**

11